UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HERMINIO JAVIER LOPEZ, JAVIER DE JESUS, JORGE
RAMON, CARMELO VELAZQUEZ, and HECTOR
RAMIREZ, individually and on behalf of all others
similarly situated,

                              Plaintiffs,                    CIVIL ACTION NO.: 18 Civ. 2788 (SLC)

         -against-                                           **OPINION & ORDER FOLLOWING
                                                             DAMAGES INQUEST**

EMERALD STAFFING, INC., BLUE DOG KITCHEN,
ELIZABETH SLAVUTSKY, and BORIS SLAVUTSKY,

                              Defendants.

**SARAH L. CAVE,** United States Magistrate Judge.

## I.    INTRODUCTION

In this putative collective action filed under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 et seq., and New York Labor Law ("NYLL") § 190 et seq., Plaintiffs Herminio Javier

Lopez, Javier De Jesus, Jorge Ramon, Carmelo Velazquez, and Hector Ramirez (collectively,

"Plaintiffs") seek payment of unpaid minimum wages and related relief from Defendants Emerald

Staffing Inc., Blue Dog Kitchen, Elizabeth Slavutsky, and Boris Slavutsky (collectively,

"Defendants").  (ECF No. 1 ¶¶ 1–2).  Plaintiffs allege that during several periods between 2014

and 2018, they regularly worked as food delivery persons, dishwashers, stock persons, cleaners

and porters, and general helpers at Defendants' restaurant, Blue Dog Kitchen, but Defendants

failed to pay them minimum wages as required by FLSA and the NYLL and misappropriated their

tips in violation of FLSA and the NYLL.  (Id. ¶¶ 18–22, 24–25).  On July 3, 2019, the Honorable

Henry B. Pitman, United States Magistrate Judge, found that Defendants were in default, and set

a schedule for a damages inquest, warning Defendants that if they failed to respond, the Court

would enter judgment based on Plaintiffs' written submissions without a hearing. (ECF No. 44). After this action was reassigned to the undersigned, the Clerk of the Court entered a Certificate of Default against Defendants (ECF No. 58), and Plaintiffs filed the Motion for Default Judgment (ECF Nos. 59–66), to which Defendants have failed to respond.

For the reasons that follow, Plaintiffs' Motion for Default Judgment is **GRANTED** and Plaintiffs are awarded judgment against Defendants in the total amount of $54,917.12, comprised of the following:

(1) Plaintiff Herminio Javier Lopez is awarded damages in the amount of $12,808.11, comprised of (i) $5,624.50 in unpaid minimum wages, (ii) $5,624.50 in liquidated damages, and (iii) $1,559.11 in prejudgment interest;

(2) Plaintiff Javier De Jesus is awarded damages in the amount of $34,195.36, comprised of (i) $14,561.75 in unpaid minimum wages, (ii) $14,561.75 in liquidated damages, and (iii) $5,071.86 in prejudgment interest;

(3) Plaintiff Jorge Ramon is awarded damages in the amount of $1,713.44, comprised of (i) $777.00 in unpaid minimum wages, (ii) $777.00 in liquidated damages, and (iii) $159.44 in prejudgment interest;

(4) Plaintiff Carmelo Velazquez is awarded damages in the amount of $3,745.79, comprised of (i) $1,683.50 in unpaid minimum wages, (ii) $1,683.50 in liquidated damages, and (iii) $378.79 in prejudgment interest;

(5) Plaintiff Hector Ramirez is awarded damages in the amount of $2,454.42, comprised of (i) $1,110.75 in unpaid minimum wages, (ii) $1,110.75 in liquidated damages, and (iii) $232.92 in prejudgment interest; and

(6)  Plaintiffs are awarded $23,975.00 in attorneys' fees and $693.00 in costs.

## II.      BACKGROUND

### A.  Factual Background[1]

Defendants owned and operated a restaurant known as Blue Dog Kitchen located at 37 West 43d Street in New York City.  (ECF No. 1 ¶ 7; see ECF No. 30 ¶ 55 (admitting that Defendant Elizabeth Slavutsky has an ownership interest in Blue Dog Kitchen)).  From March 2016 until December 27, 2017, Plaintiff Lopez worked at Blue Dog Kitchen as a delivery person, dishwasher, cleaner, and delivery packager, tasks that were 50% non-tipped.  (ECF No. 48 ¶¶ 3, 6).  Lopez worked 35 hours per week, for which he was paid less than minimum wage for each hour worked; in 2016, he was paid $7.50 per hour, and in 2017, he was paid $9.15 per hour.  (ECF No. 48 ¶ 6).  Lopez was not informed that tips were included in the calculation of his hourly pay and believes that a portion of his tips were distributed to kitchen employees.  (ECF No. 48 ¶¶ 7–8).

From 2014 until February 26, 2018, Plaintiff De Jesus worked at Blue Dog Kitchen, where he performed tasks similar to Lopez and was also paid less than minimum wage; in 2014 and 2015, he was paid $5.65 per hour, in 2016 $7.50 per hour, and in 2017 $9.15 per hour.  (ECF No. 49 ¶¶ 3, 5, 6).  Half of his daily work was non-tipped, he was not informed that tips were

---

[1] Unless otherwise indicated, the facts are taken from the following documents in the record:  Complaint (ECF No. 1); Answer (ECF No. 30); Plaintiffs' Proposed Findings of Fact and Conclusions of Law (ECF No. 46); Declaration of Peter H. Cooper, Esq. in Support of Motion for Default Judgment (ECF No. 47); Affidavit of Herminio Javier Lopez (ECF Nos. 48, 60); Affidavit of Javier De Jesus (ECF Nos. 49 , 61); Affidavit of Jorge Ramon (ECF Nos. 50, 62); Affidavit of Carmelo Velazquez (ECF Nos. 51, 63); and Affidavit of Hector Ramirez (ECF Nos. 52, 64).  These facts are accepted as true for purposes of determining Defendants' liability.  See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendants'] default, a court is required to accept all of [plaintiffs'] factual allegations as true and draw all reasonable inferences in [their] favor[.]").

included in the calculation of his weekly pay, and he believes that a portion of his tips were distributed to kitchen employees. (ECF No. 49 ¶¶ 6–7). De Jesus was required to sign a document acknowledging that 30% of his tips would be shared with kitchen employees. (ECF No. 49 ¶ 8 & Ex. 1).

From October 2017 until December 27, 2017, Plaintiff Ramon worked at Blue Dog Kitchen, where he performed tasks similar to Lopez and De Jesus and was paid less than minimum wage; throughout his employment he received $9.15 per hour. (ECF No. 50 ¶¶ 3, 5, 6). Half of his daily work was non-tipped, he was not informed that tips were included in the calculation of his hourly pay, and he believes that a portion of his tips were distributed to kitchen employees. (ECF No. 50 ¶¶ 6–8).

From June 2017 until November 20, 2017, Plaintiff Velazquez worked at Blue Dog Kitchen, where he performed tasks similar to the other Plaintiffs and was paid less than minimum wage; throughout his employment he received $9.15 per hour. (ECF No. 51 ¶¶ 3, 5, 6). Half of his daily work was non-tipped, he was not informed that tips were included in the calculation of his hourly wages, and he believes that a portion of his tips were distributed to kitchen employees. (ECF No. 51 ¶¶ 6–8).

From September 2017 until December 27, 2017, Plaintiff Ramirez worked at Blue Dog Kitchen, where he performed tasks similar to the other Plaintiffs and was paid less than minimum wage; throughout his employment he received $9.15 per hour. (ECF No. 52 ¶¶ 3, 5, 6). Half of his daily work was non-tipped, he was not informed that tips were included in the calculation of his hourly wages, and he believes that a portion of his tips were distributed to kitchen employees. (ECF No. 52 ¶¶ 6–8).

Defendants Elizabeth Slavutsky and Boris Slavutsky owned, operated, and managed Defendants Emerald Staffing and Blue Dog Kitchen, and exercised control over the conditions of Plaintiffs' employment, including the power to hire and fire employees, determine rates and methods of pay, determine work schedules, supervise and control work of the employees, and create and maintain wage and hour records.  (ECF No. 1 ¶¶ 8–13, 55–56).  Plaintiffs allege that because Defendants required tipped employees like Plaintiffs to pool or forfeit a portion of their tips for the benefit of the kitchen employees, Defendants are not entitled to take any "tip credits" under federal or state law and instead were required to pay all of their tipped employees, including Plaintiffs, the full statutory minimum wage.  (ECF No. 1 ¶¶ 57, 60).

  B.  **Procedural Background**

On March 29, 2018, Plaintiffs filed a complaint in this Court asserting claims against the Defendants under the FLSA and the NYLL.  (ECF No. 1).  On July 22, 2018, after Defendants failed to answer, move, or otherwise respond to the Complaint, Plaintiffs requested and the Clerk of the Court entered a Certificate of Default, and Plaintiffs moved for entry of default judgment.  (ECF Nos. 10–12).  Only after the Honorable Paul A. Engelmayer scheduled a hearing on Plaintiffs' motion did Defendants Blue Dog Kitchen and Elizabeth Slavutsky (but not Emerald Staffing nor Boris Slavutsky) appear through counsel, Nina A. Ovrutsky, Esq., and seek an adjournment of the conference, which Judge Engelmayer granted.  (ECF Nos. 16, 18–22).

Their appearance was fleeting, however; within a month, Ms. Ovrutsky moved to withdraw, citing her clients' lack of cooperation and communication.  (ECF Nos. 23-1 ¶¶ 5–7; 24-1 ¶¶ 5–7).  Judge Engelmayer denied the motion and held an in-person conference, following which he denied Plaintiffs' motion for default judgment without prejudice and granted Ms.

Ovrutsky's leave to withdraw.  (ECF Nos. 25–27).  As memorialized in a letter from Plaintiffs' counsel to Defendants after the conference, Judge Engelmayer also ordered that Defendants were to respond to the Complaint by November 15, 2018, and the corporate Defendants were to appear through counsel or risk being found in default and having judgment entered against them.  (ECF No. 27).

On November 15, 2018, all Defendants appeared through new counsel, Diane H. Lee, Esq., and filed their Answer.  (ECF No. 30).  On January 4, 2019, the parties consented to the jurisdiction of the Magistrate Judge for all purposes (ECF No. 35), and soon after requested a referral to the Court's Mediation Program, which Judge Pitman granted.  (ECF Nos. 36–37).  On March 29, 2019, after the parties were apparently successful in achieving a settlement through mediation, Judge Pitman ordered the parties to submit their settlement agreement for the Court's approval under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).  (ECF No. 39).

On May 16, 2019, the parties' counsel filed a joint status letter reporting that they had memorialized the terms of the settlement in an agreement that all Plaintiffs had executed but, despite Defendants' counsel's repeated attempts, Defendants had failed to execute the agreement or respond to their counsel's repeated communications.  (ECF No. 40).  Counsel therefore jointly asked the Court to order Defendants to show cause why they should not be sanctioned or held in default for failing to respond to counsel and cooperate as the Court had ordered.  (Id.)  In response, Judge Pitman ordered Defendants to appear in person at a conference on May 29, 2019.  (ECF No. 41).  Their counsel appeared at the conference, but Defendants themselves failed to appear.  (ECF No. 42).  Citing a "complete breakdown in communications between [D]efendants and their counsel," by Order dated May 29, 2019, Judge Pitman granted

Ms. Lee's application to withdraw as counsel for all Defendants, warned Blue Dog and Emerald Staffing that they must appear through counsel or risk default judgment, and ordered Defendant Elizabeth Slavutsky to appear at an in-person conference on July 2, 2019. (ECF No. 42). Judge Pitman warned Ms. Slavutsky that he would deem her failure to appear to be an abandonment of her defenses, following which he would set the matter for an inquest to determine Plaintiffs' damages. (Id.) At the July 2, 2019 conference, neither Ms. Slavutsky or any of the other Defendants appeared, and Judge Pitman entered an order scheduling the procedures for an inquest on Plaintiffs' damages, in which he warned Defendants that the failure to respond to Plaintiffs' submissions or contact the Court to request a hearing would result in the Court determining damages based on "Plaintiffs' written submissions alone without an in-court hearing." (ECF No. 44 at 2).

The action was reassigned to the undersigned, and on October 21, 2019, the Clerk of the Court entered a Certificate of Default against all Defendants. (ECF No. 58). Plaintiffs timely filed Proposed Findings of Fact and Conclusions of Law, along with supporting affidavits and exhibits, as well as the Motion for Default Judgment that is now before the Court. (ECF Nos. 46–52, 59–63, 66). Defendants have not filed a response to Plaintiffs' written submissions or otherwise contacted the Court regarding the inquest.

In a December 17, 2019 status report, Plaintiffs' counsel notified the Court that he had been contacted by Attorney Scott Matthews, who represented the Defendants and wished to discuss a resolution of the case. (ECF No. 68). Although some discussions apparently ensued, communications from Mr. Matthews ceased, and as of January 17, 2020, Plaintiffs' counsel had not received any further communications from Defendants or anyone on their behalf. (ECF

No. 70).  Accordingly, on February 18, 2020, the Court notified the parties of its intent to rule on

the Motion for Default Judgment based on Plaintiffs' written submissions.  (ECF No. 71).

## II.   DISCUSSION

No party has requested a hearing on the issue of damages, and Defendants have not

submitted any written materials.  Therefore, the Court has conducted the inquest based solely

on the materials Plaintiffs have submitted in support of their request for damages.  See Cement

& Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230,

234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based

upon evidence presented at a hearing or upon a review of detailed affidavits and documentary

evidence"); Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) ("Rule 55(b)(2) of the

Federal Rules of Civil Procedure . . . allows but does not require the district judge to conduct a

hearing."); Perez v. 50 Food Corp., No. 17 Civ. 7837 (AT) (BCM), 2019 WL 7403983, at *3 (S.D.N.Y.

Dec. 4, 2019), adopted at, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020); Fed. R. Civ. P. 55(b)(2).

### A.  Legal Standards

#### 1.  Obtaining a default judgment

A party seeking a default judgment must follow the two-step procedure set forth in

Federal Rule of Civil Procedure 55.  See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y.

Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 185–86 (2d Cir. 2015).  First, under

Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the

Court must enter a certificate of default.  Fed. R. Civ. P. 55(a).  Second, after entry of the default,

if the party still fails to appear or move to set aside the default, the Court may enter a default

judgment.  Fed. R. Civ. P. 55(b).  Whether to enter a default judgment lies in the "sound

discretion" of the trial court.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Because

a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan

v. Snow, 652 F.2d 274, 277 (2d Cir. 1981), the district court must "carefully balance the concern

of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants

a chance to be heard, on the other."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d

19, 29 (E.D.N.Y. Mar. 19, 2015) (citing Enron, 10 F.3d at 96).

### 2.  **Determining liability**

A defendant's default is deemed "a concession of all well-pleaded allegations of liability,"

Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default

"only establishes a defendant's liability if those allegations are sufficient to state a cause of action

against the defendants."  Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d

Cir. 2015).  The Court must determine "whether the allegations in the complaint establish the

defendants' liability as a matter of law."  Id.  If the Court finds that the well-pleaded allegations

establish liability, the Court then analyzes "whether plaintiff has provided adequate support for

[his requested] relief[.]"  Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008).

If, however, the Court finds that the complaint fails to state a claim on which relief may be

granted, the Court may not award damages, "even if the post-default inquest submissions supply

the missing information."  Perez, 2019 WL 7403983, at *4.

### 3.  **Determining damages**

Once liability has been established, the Court must "conduct an inquiry in order to

ascertain the amount of damages with reasonable certainty."  Am. Jewish Comm. v. Berman,

No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), adopted by 2016

WL 4532201 (S.D.N.Y. Aug. 29, 2016) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).  A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012).  The evidence the plaintiff submits must be admissible.  Poulos v. City of New York, No. 14 Civ. 03023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("damages must be based on admissible evidence").  If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing.  Fustock v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment") (internal citation omitted).

In a FLSA case such as this, where Defendants have failed to produce any employment records, the Court may credit Plaintiffs' "recollections regarding their hours and pay in conducting [the] inquest."  Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), as amended (Mar. 29, 2018).  The Court "must ensure that [their] approximations and estimates are reasonable and appropriate." Id.  Ultimately, the default judgment the Court enters "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c); see Silge v. Merz, 510 F.3d

157, 160 (2d Cir. 2007) (limiting damages to those specified in demand in complaint "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer"); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 Civ. 1318 (GBD) (BCM), 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018) (holding that plaintiff could not recover damages for unalleged claims against defaulted defendant).

### B.  Jurisdiction and Venue

As a threshold matter, the Court has subject matter jurisdiction over Plaintiffs' claims. They sue under a federal statute—FLSA—that gives rise to subject matter jurisdiction under 28 U.S.C. § 1331.   The Court may exercise supplemental jurisdiction over their NYLL claims because they arise out of the same facts and circumstances as their FLSA claims.  See Perez, 2019 WL 7403983, at *5.

The Court has personal jurisdiction over Defendants, which is "a necessary prerequisite to entry of a default judgment."  Reilly v. Plot Commerce, No. 15 Civ. 05118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016), adopted by 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016) (quoting Sheldon v. Plot Commerce, No. 15 Civ. 5885 (CBA) (CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016)).   Defendants answered the complaint, participated in pre-trial proceedings, engaged in settlement negotiations, and never moved for dismissal under Federal Rule of Civil Procedure 12(b)(2), thus waiving any argument that the Court lacked personal jurisdiction.  See Fed. R. Civ. P. 12(h)(1)(B); Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 62 (2d Cir. 1999).   Defendants have also waived any objection to venue in this Court.  See Fed. R. Civ. P. 12(b)(3), 12(h)(1)(B).

C.   **Statute of Limitations**

Under the NYLL, the statute of limitations is six years.  <u>See</u> NYLL ¶ 198(3).  Under FLSA, the statute of limitations is two years, or, if the violations were "willful," three years.  <u>See</u> 29 U.S.C. § 255(a); <u>see</u> <u>also</u> <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 129 (1988).  A FLSA violation is willful if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited." <u>Id.</u> at 133.  Although plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief.  <u>Ni v. Bat-Yam Food Servs. Inc.</u>, No. 13 Civ. 7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).

Here, the earliest date on which any Plaintiff worked was 2014 (ECF No. 48 ¶ 3 (Plaintiff De Jesus)), and Plaintiffs filed their Complaint on March 29, 2018.  (ECF No. 1).  Thus, each of the Plaintiffs' employment periods are entirely within by NYLL's six-year statute of limitations but would not be completely covered by the FLSA's shorter statute of limitations.  Because the NYLL provides for equal or greater relief relative to the FLSA, the Court awards Plaintiffs damages under the NYLL.  <u>See</u> <u>Schalaudek v. Chateau 20th St. LLC</u>, No. 16 Civ. 11 (WHP) (JLC), 2017 WL 729544, at * 5 (S.D.N.Y. Feb. 24, 2017).

D.   **Application of Legal Standards**

1.   **Liability**

To state a claim for wages under the FLSA, a plaintiff must allege that: (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked for hours for which he did not receive minimum or overtime wages.  <u>See</u> <u>Tackie v. Keff Enter., Inc.</u>, No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014).  A wage-and-hour claim under the

NYLL involves a similar analysis, "except that the NYLL does not require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual sales." Id. at *2 n.2. The Court analyzes each of these three elements in turn.

### a.   Employment relationship

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts afford the term "employer" "an expansive definition with 'striking breadth.'" Mondragon v. Keff, 15 Civ. 2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 US. 318, 326 (1992)). Under the FLSA, "[a]n individual may have multiple 'employers,'" such that "'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'" Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether Defendants were Plaintiffs' "employers" for FLSA purposes, the Court examines the "economic reality" of the working relationship. Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013). Courts in the Second Circuit consider four non-exclusive factors to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Irizarry, 722 F.3d at 105 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)). This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive[.]" Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also very broad, <u>see</u> NYLL ¶ 190(3),[2] "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" <u>Mondragon</u>, 2019 WL 2551536, at *7 (quoting <u>Hart v. Rick's Cabaret Int'l, Inc.</u>, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013)).  In the absence of a decision from the New York Court of Appeals answering "the question of whether the test for 'employer' status is the same under the FLSA and the NYLL," <u>Camara v. Kenner</u>, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." <u>Hart</u>, 967 F. Supp. 2d at 924 (internal citation omitted).  "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." <u>Martin</u>, 273 F. Supp. 3d at 422.

Plaintiffs allege that Defendants employed them at their restaurant, Blue Dog Kitchen, and that at all relevant times, they were "employees."  (ECF No. 1 ¶¶ 18–22; ECF No. 48 ¶ 3; ECF No. 49 ¶ 3; ECF No. 50 ¶ 3; ECF No. 51 ¶ 3; ECF No. 52 ¶ 3.  <u>See</u> <u>also</u> ECF No. 30 ¶¶ 18–22, 29–45).  Defendant Elizabeth Slavutsky admitted that she has "an ownership interest" in Blue Dog Kitchen (ECF No. 30 ¶ 55), and by their default, the remaining Defendants have admitted their status as employers as well.  <u>See</u> <u>Rovio Entm't, Ltd.</u>, 97 F. Supp. 3d at 545.  Plaintiffs worked at Blue Dog Kitchen as delivery workers, dishwashers, cleaners, and delivery packagers during

---

[2] NYLL § 190(3) defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

several periods from March 2016 until December 2017.  (ECF No. 48 ¶ 5; ECF No. 49 ¶ 5; ECF No. 50 ¶ 5; ECF No. 51 ¶ 5; ECF No. 52 ¶ 5).  Plaintiffs also allege that Defendants Elizabeth Slavutsky and Boris Slavutsky determined the wages and compensation of employees, including Plaintiffs, established the schedules of employees, maintained employee records, and had the authority to hire and fire employees.  (ECF No. 1 ¶¶ 8–14).  Plaintiffs have therefore adequately alleged employer-employee relationships with Defendants.  Perez, 2019 WL 7403983, at *6.

Because the Court has found that the Defendants were Plaintiffs' employers, each Defendant is jointly and severally liable under FLSA and the NYLL for any damages award made in Plaintiffs' favor.  See Fermin, 93 F. Supp. 3d at 37 (imposing joint and several liability on defaulting corporate and individual defendants); Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (imposing joint and several liability on defaulting corporate and individual defendants where allegations that individual defendant "was an owner, partner, or manager," along with his default, established him as employer under the FLSA and the NYLL).

### b.  Interstate commerce

Under the FLSA, Plaintiffs must establish that they or their employer was engaged in interstate commerce.  See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); see 29 U.S.C. § 207(a)(1) (employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at not less than "one and one-half times the regular rate at which he is employed").

Plaintiffs have plausibly alleged both theories.   They each affirm that their "responsibilities required [them] to handle goods, including food and cleaning products, that traveled interstate."  (ECF No. 48 ¶ 5; ECF No. 49 ¶ 5; ECF No. 50 ¶ 5; ECF No. 51 ¶ 5; ECF No. 52 ¶ 5).  Thus, each Plaintiff "engaged in commerce" for the purposes of the FLSA.  Tackie, 2014 WL 4626229, at *3.  In addition, Defendants Emerald Staffing and Blue Dog Kitchen "had employees engaged in commerce or in the production of goods for commerce or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce," and have an annual gross volume of sales greater than $500,000.  (ECF No. 1 ¶ 15).  This meets the threshold for enterprise liability under the FLSA, see 29 U.S.C. § 203(s)(1)(A), and therefore, Plaintiffs satisfied the interstate commerce element for FLSA liability.  See Mondragon, 2019 WL 2251536, at *9.

### c.   Liability for unpaid minimum wages

Under both federal and state law, employers must pay employees a statutory minimum wage.  See 29 U.S.C. § 206(a)(1); 12 N.Y.C.R.R. § 146-1.2.  The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, 29 U.S.C. § 206, or the state minimum wage, if it is greater than the federal minimum wage.  See 29 U.S.C. § 218(a).

Under federal and state law, employers may compensate tipped employees at a lower hourly rate by crediting a portion of their tips against the minimum wage.  29 U.S.C. § 203(m)(2); 12 N.Y.C.R.R. § 146-1.3(b); see Andrade v. First Ave. Rest. Ltd., No. 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. June 3, 2016).  "To be eligible to take a tip credit, however, the employer must satisfy certain prerequisites."  Kim v. Kum Gang, Inc., No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015).  These prerequisites include the requirement

that the employer notify the employee, before the employment begins, "of its intention to include tip income when calculating wages actually paid for minimum wages purposes." Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010).  The employer bears the burden of proving that this notice was given.  See Reyes v. Café Cousina Rest. Inc., No. 18 Civ. 1873 (PAE) (DF), 2019 WL 5722475, at *5 (S.D.N.Y. Aug. 27, 2019).  The NYLL also allows an employer to pay tipped food service workers a lower minimum wage.  See NYLL § 652(4).  "An employer may receive the benefit of this tip credit only if the employer provides 'to each employee a statement with every payment of wages listing . . . allowances . . . claimed as part of the minimum wage' and 'maintain[s] and preserve[s] for not less than six years weekly payroll records which shall show for each employee . . . allowances . . . claimed as part of the minimum wage.'"  Cao, 2010 WL 4159391, at *2 (quoting Padilla v. Manlapaz, 643 F. Supp. 2d 302, 309–10 (E.D.N.Y. 2009)); 12 N.Y.C.R.R. §§ 146-1.3, -2.2.  Under both the FLSA and the NYLL, the notice must be sufficient to apprise the employee of the tip credit provision and the fact that the employer intends to take the credit as to the employee's wages.  See Reyes, 2019 WL 5722475, at *5; Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015) (finding generic FLSA posters to be insufficient notice).

Here, the Defendants failed to meet these requirements and are therefore ineligible for the tip credit.  (ECF No. 48 ¶¶ 6–7; ECF No. 49 ¶¶ 6–7; ECF No. 50 ¶¶ 6–7; ECF No. 51 ¶¶ 6–7; ECF No. 52 ¶¶ 6–7).  The only Plaintiff who received any information about tips is Plaintiff De Jesus, who was required to sign a document acknowledging that 30% of his tips would be shared with kitchen employees.  (ECF No. 49 ¶ 8 & Ex. 1).  There is no evidence that Defendants provided this notice to Plaintiff De Jesus before his employment, and in fact, the notice in the record is

dated well after he had begun working.  (Id.)  Furthermore, this document does not contain the required language informing Plaintiff De Jesus that Defendants would be claiming a tip credit against the minimum wage.  See Schalaudek, 2017 WL 729544, at *6.  Accordingly, as to all five Plaintiffs, Defendants failed to meet the notice requirements in the FLSA and the NYLL, and are not entitled to any tip credit against the minimum wage.  Id. at *7.

Because Defendants are not entitled to any tip credit, Defendants were required to pay Plaintiffs full minimum wage, rather than the lower minimum wage for tipped workers.  See Cao, 2010 WL 4159391, at *2.  For the periods relevant to this action, the statutory minimum wage per hour in New York State[3] was as follows: (i) during 2014 until December 30, 2014, $8.00; (ii) from December 31, 2014 until December 30, 2015, $8.75; (iii) from December 31, 2015 until December 30, 2016, $9.00; (iv) from December 31, 2016 until December 30, 2017, $11.00; and (v) from December 31, 2017 through 2018, $13.00.  See NYLL § 652(1)(a)(ii).[4]  Defendants did not pay Plaintiffs in accordance with these statutory minimums and accordingly, Plaintiffs are entitled to recover damages for the amount by which they were underpaid.  See Cao, 2010 WL 4159391, at *2.

---

[3] Each of these hourly rates was higher than the respective federal statutory minimum wage.  See 29 U.S.C. § 206(a)(1).

[4] The Court notes that Plaintiffs use the higher minimum wage rates for "large employers," despite the absence of any allegations or evidence that Defendants employed eleven or more people such that their restaurant qualifies as a "large employer."  See NYLL ¶ 652(1)(a)(i).  In light of Defendants' default, however, the Court affords Plaintiffs the benefit of the doubt and applies the higher rate they have requested.  See Sanchez v. Jyp Foods, Inc., No. 16 Civ. 4472 (JLC), 2018 WL 4502008, at *9 n.13 (S.D.N.Y. Sept. 20, 2018) (applying large employer minimum wage rate despite absence of information about number of employees); but see Reyes, 2019 WL 5722475, at *9 (in the absence of support for plaintiffs' assumption that restaurant was a "large employer," using the minimum wage rates for "small employers" under NYLL § 652(1)(a)(ii)).

2.  **Calculation of damages**

As set forth above, Plaintiffs were entitled to be paid at least the statutory minimum wage during the time they were employed by Defendants.  With partial reliance on the charts Plaintiffs have submitted in support of their damages on this inquest (see ECF Nos. 47-3–47-8), the Court addresses each Plaintiff's claims for damages below.

a.  **Herminio Javier Lopez**

From March 2016 until December 27, 2017, Lopez worked 35 hours per week at Blue Dog Kitchen and was paid less than minimum wage; in 2016, he was paid $7.50 per hour, and in 2017, he was paid $9.15 per hour.  (ECF No. 48 ¶¶ 3, 6).  The applicable minimum wage in 2016 was $9.00 per hour, so for each hour he worked in 2016, he was underpaid by $1.50 per hour, or $52.50 per week, for 43 weeks (Mar. 1, 2016–Dec. 31, 2016).  The applicable minimum wage in 2017 was $11.00, so for each hour he worked in 2017, he was underpaid by $1.85, or $64.75 per week, for 52 weeks (Jan. 1, 2017–Dec. 27, 2017).  The total amount by which Lopez was underpaid was $5,624.50 ((43 x $52.50 = $2,257.50) + (52 x $64.75 = $3,367.00)).  (See ECF No. 47-3).

b.  **Javier De Jesus**

From 2014 until February 26, 2018, De Jesus worked 35 hours per week and was paid less than minimum wage; in 2014 and 2015, he was paid $5.65 per hour; in 2016 he was paid $7.50 per hour; in 2017, he was paid $9.15 per hour; and in 2018, he was paid $10.85 per hour.  (ECF No. 49 ¶ 6; ECF No. 47-4 at 5).  The applicable minimum wage in 2014 was $8.00 per hour, so for each hour he worked in 2014 he was underpaid by $2.35 per hour, or $82.25 per week, for 27 weeks (27 weeks in 2014 based on requested damages at ECF No. 47-4).  The applicable minimum wage in 2015 was $8.75 per hour, so for each hour he worked in 2015, he was underpaid $3.10,

or $108.50 per week, for all 52 weeks of the year.[5]  The applicable minimum wage in 2016 was $9.00 per hour, so for each hour he worked in 2016, he was underpaid by $1.50, or $52.50 per week, for all 52 weeks of the year.  The applicable minimum wage in 2017 was $11.00 per hour, so for each hour he worked in 2017, he was underpaid by $1.85, or $64.75 per week, for all 52 weeks of the year.  The applicable minimum wage in 2018 was $13.00 per hour, so for each hour he worked in 2018, he was underpaid by $2.15, or $75.25 per week, for eight weeks (Jan. 1, 2018–Feb. 28, 2018).  The total amount by which De Jesus was underpaid was $14,561.75 ((27 x $82.25 = $2,220.75) + (52 x $108.50 = $5,642.00) + (52 x $52.50 = $2,730.00) + (52 x $64.75 = $3,367.00) + (8 x $75.25 = $602.00)).  (See ECF No. 47-4).

### c.  Jorge Ramon

From October 2017 through December 27, 2017, Ramon worked 35 hours per week and was paid $9.15 per hour, less than the minimum wage.  (ECF No. 50 ¶ 6).  The applicable minimum wage in 2017 was $11.00, so for each hour Ramon worked, he was underpaid by $1.85 per hour, or $64.75 per week, for twelve weeks (Oct. 1, 2017–Dec. 27, 2017).  The total amount by which Ramon was underpaid was $777.00 (12 x $64.75).  (See ECF No. 47-5).

### d.  Carmelo Velazquez

From June 2017 through November 20, 2017, Velazquez worked 35 hours per week and was paid $9.15 per hour, less than minimum wage.  (ECF No. 51 ¶ 6).  The applicable minimum wage in 2017 was $11.00, so for each hour Velazquez worked, he was underpaid by $1.85 per

---

[5] The Court notes that De Jesus' chart incorrectly indicates that he was paid $5.00 per hour throughout 2015 (ECF No. 47-4 at 2), in contravention of his affidavit (see ECF No. 49 ¶ 6), and therefore, the Court uses the latter.

hour, or $64.75 per week, for 26 weeks (June 1, 2017–Nov. 20, 2017).  The total amount by which Velazquez was underpaid was $1,683.50 (26 x $64.75).  (See ECF No. 47-6).

> ### e.   Hector Ramirez

From September 2017 through December 27, 2017, Ramirez worked 35 hours per week and was paid $9.15 per hour, less than minimum wage.  (ECF No. 52 ¶ 6).  The applicable minimum wage in 2017 was $11.00, so for each hour Ramirez worked, he was underpaid by $1.85 per hour, or $64.75 per week, for 17 weeks (Sept. 1, 2017–Dec. 27, 2017.  The total amount by which Ramirez was underpaid was $1,100.75 (17 x $64.75).  (See ECF No. 47-7).

> ### 3.   Liquidated Damages

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an 'additional equal amount as liquidated damages.'"  Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (quoting 29 U.S.C. § 216(b)).  "[W]here the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," the Court has the discretion to deny liquidated damages. Barfield, 537 F.3d at 150.  This burden is "a difficult one," id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)), and where "defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award." Guaman v. J&C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016).  A plaintiff who "is entitled to liquidated damages under the FLSA, but has been awarded wage and overtime damages pursuant to the NYLL because state law provided the

greater relief" is entitled to FLSA liquidated damages "based on 'the amount of actual damages that would have been awarded had the federal minimum wage rate applied.'" Kernes v. Global Structures, LLC, No. 15 Civ. 659 (CM) (DF), 2016 WL 880199, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012)).

The NYLL also authorizes liquidated damages. See Xochimitl, 2016 WL 4704917, at *15. Effective November 24, 2009, "an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'" Id. (quoting NYLL § 198(1-a)). "Courts deem defendants' actions willful where they have defaulted, see e.g., Angamarca, 2012 WL 3578781, at *8, and, consequently, such defaulting defendants will have '[o]bviously . . . made no showing of 'good faith.'" Xochimitl, 2016 WL 4704917, at *15 (quoting Guaman, 2016 WL 791230, at *7). Effective April 9, 2011, the liquidated damages award under the NYLL is 100% of the amount of unpaid wages. NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both FLSA and the NYLL. See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016); Mondragon, 2019 WL 2551536, at *11. A plaintiff should recover "under the statute that provides the greatest relief." Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *9 (S.D.N.Y. Nov. 7, 2016) (internal citation omitted). The NYLL allows for prejudgment interest in addition to liquidated damages, see NYLL ¶ 198(1-a), but the FLSA does not. See Valdez v. H&S Rest. Operations, Inc., No. 14 Civ. 4701 (SLT) (MDG), 2016 WL

3079028, at *6 (E.D.N.Y. Mar. 29, 2016), adopted by 2016 WL 3087053 (E.D.N.Y. May 27, 2016).

The NYLL therefore provides greater relief.  See Mondragon, 2019 WL 2551536, at *11.

Having defaulted, Defendants have not carried their burden of demonstrating good faith under the NYLL, see id., and therefore, Plaintiffs are entitled to liquidated damages equivalent to 100% of their unpaid wages set forth above.  See Schalaudek, 2017 WL 729544, at *10 (awarding liquidated damages of 100% of unpaid wages where defendants had defaulted).

### 4.  Prejudgment Interest

Under the FLSA, prejudgment interest is not available where liquidated damages have been awarded.  See Mondragon, 2019 WL 2551536, at *11.  Under New York law, however, Plaintiffs may recover both liquidated damages and prejudgment interest, NYLL § 198(1-a), because the former are considered punitive, while the latter "compensate[s] a plaintiff for the loss of use of money."  Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999). "Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages."  Xochimitl, 2016 WL 4704917, at *18 (internal citation omitted).

Under New York law, the simple interest rate is 9% per annum, N.Y. C.P.L.R. § 5004, and is computed "on a simple interest basis."  Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998).  For damages that "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. 5001(b); see Marfia, 147 F.3d at 91 (noting courts' discretion to calculate prejudgment interest based on the "date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation'").  Although Plaintiffs suggest that the Court use a date two years before judgment (ECF No. 46 at 11), the

Court notes that the midpoint of the plaintiff's employment is often used as the date from which to calculate prejudgment interest in wage-and-hour cases.  See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012); Mondragon, 2019 WL 2551526, at *11.  The Court elects that approach here.

Lopez's employment lasted a total of 666 days,[6] and therefore, the midpoint of his employment was January 28, 2017 (333 days before December 27, 2017).  Calculating prejudgment interest from January 28, 2017, three years and 29 days have passed from that date, or 3.08 years.  Therefore, the prejudgment interest on the actual and liquidated damages accrued through the date of this Order is $1,559.11 ($5,624.50 x .09 x 3.08) (actual damages multiplied by the simple annual interest rate then by years worked).

De Jesus' employment lasted a total of 1,366 days,[7] and therefore, the midpoint of his employment was April 14, 2016 (683 days before February 26, 2018).  Calculating prejudgment interest from April 14, 2016, three years, ten months, and twelve days have passed from that date, or 3.87 years.  Therefore, the prejudgment interest accrued through the date of this Order is $5,071.86 ($14,561.75 x .09 x 3.87).

Ramon's employment lasted 87 days,[8] and therefore, the midpoint of his employment was November 14, 2017 (43 days before December 27, 2017).  Calculating prejudgment interest from November 14, 2017, two years, three months, and twelve days have passed from that date,

---

[6] Lopez does not indicate the exact date on which he began working at Blue Dog Kitchen in March 2016, but for purposes of calculating prejudgment interest, the Court uses March 1, 2016.  (See ECF No. 48 ¶ 3).

[7] De Jesus does not indicate the date on which he began working at Blue Dog Kitchen, but for purposes of calculating prejudgment interest, the Court uses June 1, 2014.  (See ECF No. 49 ¶ 3).

[8] Ramon does not indicate the date on which he began working at Blue Dog Kitchen, but for purposes of calculating prejudgment interest, the Court uses October 1, 2017.  (See ECF No. 50 ¶ 3).

or 2.28 years.  Therefore, the prejudgment interest accrued through the date of this Order is $159.44 ($777.00 x .09 x 2.28).

Velazquez's employment lasted 172 days,[9] and therefore, the midpoint of his employment was August 26, 2017 (86 days before November 20, 2017).  Calculating prejudgment interest from August 26, 2017, two years, six months have passed from that date, or 2.5 years. Therefore, the prejudgment interest accrued through the date of this Order is $378.79 ($1,683.50 x .09 x 2.5).

Ramirez's employment lasted 117 days,[10] and therefore, the midpoint of his employment was October 30, 2017 (58 days before December 27, 2017).  Calculating prejudgment interest from October 30, 2017, two years, three months, and 27 days have passed from that date, or 2.33 years.  Therefore, the prejudgment interest accrued through the date of this Order is $232.92 ($1,110.75 x .09 x 2.33).

\*       \*       \*

Based on the analysis set forth above, the following chart indicates the amount of damages the Court awards to each Plaintiff:[11]

---

[9] Velazquez does not indicate the date on which he began working at Blue Dog Kitchen, but for purposes of calculating prejudgment interest, the Court uses June 1, 2017 (See ECF No. 51 ¶ 3).

[10] Ramirez does not indicate the date on which he began working at Blue Dog Kitchen, but for purposes of calculating prejudgment interest, the Court uses September 1, 2017.  (See ECF No. 52 ¶ 3).

[11] The Court notes that, in the case of each Plaintiff, the Court has performed and relies on its own calculations such that the award of damages is greater than the amount each Plaintiff has requested.  (ECF No. 46 at 8–10).  See Canaveral v. Midtown Diner NYC, Inc., No. 19 CV 635 (GBD) (JLC), 2019 WL 4195194, at \*4 n.5 (S.D.N.Y. Sept. 5, 2019) (court relied on its own calculations in awarding damages in default wage-and-hour action); Schalaudek, 2017 WL 729544, at \*6 & nn.5 & 11 (same); Changxing Li v. Kai Xiang Dong, No. 15 Civ. 7554 (GBD) (AJP), 2017 WL 892611, at \*6 & n.11 (S.D.N.Y. Mar. 7, 2017) (same).

| Plaintiff | Unpaid Wages | Liquidated Damages | Prejudgment Interest | Total |
|---|---|---|---|---|
| Lopez | $5,624.50 | $5,624.50 | $1,559.11 | $12,808.11 |
| De Jesus | $14,561.75 | $14,561.75 | $5,071.86 | $34,195.36 |
| Ramon | $777.00 | $777.00 | $159.44 | $1,713.44 |
| Velazquez | $1,683.50 | $1,683.50 | $378.79 | $3,745.79 |
| Ramirez | $1,110.75 | $1,110.75 | $232.92 | $2,454.42 |
| **TOTAL** | | | | **$54,917.12** |

**E.  Attorneys' Fees and Costs**

Plaintiffs request an award of $26,638 for attorneys' fees and costs in this action.  (ECF No. 46 at 11).  Both FLSA and NYLL permit a successful plaintiff to recover reasonable attorneys' fees.  29 U.S.C. § 216(b); NYLL §§ 198, 663.  To determine a "presumptively reasonable fee," the Court multiples the hours counsel reasonably spent on the litigation by a reasonable hourly rate.  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  "The presumptively reasonable fee boils down to what a reasonable paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  Simmons v. N.Y.C. Transit Auth. 575 F.3d 170, 174 (2d Cir. 2009) (internal citations omitted).

**1.  Reasonable hourly rate**

Plaintiffs' counsel, Peter H. Cooper, Esq., requests an hourly rate of $400.  (ECF No. 46 at 11).  To determine whether an hourly rate is reasonable, the Second Circuit has instructed district courts to "apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill."  Galeana v. Lemongrass on Broadway, Corp., 120 F. Supp. 3d

306, 323 (S.D.N.Y. 2014) (citing <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 882 (2d Cir. 1998)).  A court

may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii]
> the skill requisite to perform the legal service properly; [iv] the preclusion of
> employment by the attorney due to acceptance of the case; [v] the customary fee;
> [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the
> client or the circumstances; [viii] the amount involved and the results obtained;
> [ix] the experience, reputation, and ability of the attorneys; [x] the "undesirability'
> of the case; [xi] the nature and length of the professional relationship with the
> client; and [xii] awards in similar cases.

<u>Gamero v. Koodo Sushi Corp.</u>, 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting <u>Hensley v.</u>

<u>Eckerhart</u>, 461 U.S. 424, 430 n.3 (1983)).

In this district, courts generally award experienced wage-and-hour attorneys between

$300 to $400 per hour.  <u>See</u> <u>Surdu v. Madison Global, LLC</u>, No. 15 Civ. 6567 (HBP), 2018 WL

1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more

decades of experience); <u>see</u> <u>also</u> <u>Pastor v. Alice Cleaners, Inc.</u>, No. 16 Civ. 7264 (JLC), 2017 WL

5625556, at *7 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced

litigators in wage-and-hour cases in this district); <u>but see</u> <u>Williams v. Epic Sec. Corp.</u>, No. 15 Civ.

05610 (SDA), 2019 WL 1322384, at *3 (S.D.N.Y. Mar. 25, 2019) (awarding $600 per hour to lead

attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-

wage-and-hour experience).

Cooper's requested hourly rate of $400 is "at the high end of what courts in this district

typically grant."  <u>See</u> <u>Smith v. Dig. Soc. Retail Inc.</u>, No. 18 Civ. 6602 (RA), 2019 WL 5450397, at *3

(S.D.N.Y. Oct. 24, 2019).  Other courts in this district have deemed a reasonable hourly rate for

Cooper to be $350.  <u>See</u> <u>Escobar v. Fresno Gourmet Deli Corp.</u>, No. 16 Civ. 6816 (PAE), 2016 WL

7048714, at *4 (reducing Cooper's rate from $400 to $350); <u>Vasquez v. TGD Group, Inc.</u>, No. 14

Civ. 7862 (RA), 2016 WL 3181150, at *4 (S.D.N.Y. June 3, 2016) (same); but see Mosso-Salazar v. New Lexington Corp., No. 18 Civ. 02505 (GBD) (SDA), 2018 WL 6288137, at *5 (S.D.N.Y. Sept. 4, 2018) (adopting $400 rate for Cooper), adopted by 2018 WL 4961456 (S.D.N.Y. Oct. 15, 2018). The Court finds that this reduction is particularly appropriate in this case, from which is absent any novel or complex legal or factual questions and in which the Defendants have defaulted. See Xochimitl, 2016 WL 4704917, at *20 (reducing attorneys' hourly rates where defendants had defaulted); Andrade, 2016 WL 3141567, at *11 (same); see also Smith, 2019 WL 5450397, at *3 (declining to award $400 hourly rate where attorney "has not shown there is a meaningful distinction between his prior cases and the instant one so as to warrant" higher rate). Accordingly, the Court applies an hourly rate of $350.00 to Cooper.

### 2. Reasonable hours expended

Plaintiffs' counsel expended a total of 71.5 hours on this case.  (ECF No. 47-8).  To determine the reasonable number of hours required by a case, the critical inquiry is "whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).  Courts must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly."  Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016), adopted by 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (quoting Hensley, 461 U.S. at 434 (1983)).

Plaintiffs have provided the Court with Cooper's contemporaneous billing records, including hours expended, dates of work, and brief descriptions of the tasks performed.  (ECF No. ECF No. 47-8).  The Court has examined these records and finds that the hours expended were reasonable, and with two minor exceptions, none of the work performed was "excessive, redundant, or otherwise unnecessary."  Hensley, 461 U.S. at 434.  The two exceptions are two entries each for 1.5 hours in the amount of $112.50 for "TC", a person whose name, title, experience, and role in the case are unexplained in Plaintiffs' submissions.  (ECF No. 47-8 at 2–3).  Accordingly, the Court will deduct three hours from the hours expended, for a total of 68.5 hours.

\*        \*        \*

Pursuant to the above, the Court awards attorneys' fees in the amount of $23,975.00 (68.5 hours x $350.00).

### 3.  Costs

Plaintiffs seek to recover $693 in costs.  (ECF No. 47-8 at 4).  An employee who prevails in a wage-and-hour action is entitled to recover costs.   29 U.S.C. § 216(b); NYLL § 663(1).  Recoverable costs are "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  Leblanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (internal citation omitted).  Plaintiffs seek reimbursement for the Court's $400.00 filing fee and $293.00 for process service fees.  (ECF No. 47-8 at 4).  The Court awards Plaintiffs these costs, in the total amount of $693.00.  See Xochimitl, 2016 WL 4704917, at \*22 (awarding costs in the amount of filing and certain service fees).

### III.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs' Motion for Default Judgment is **GRANTED** and Plaintiffs are awarded judgment against Defendants in the total amount of $54,917.12, comprised of the following:

(7)   Plaintiff Herminio Javier Lopez is awarded damages in the amount of $12,808.11, comprised of (i) $5,624.50 in unpaid minimum wages, (ii) $5,624.50 in liquidated damages, and (iii) $1,559.11 in prejudgment interest;

(8)   Plaintiff Javier De Jesus is awarded damages in the amount of $34,195.36, comprised of (i) $14,561.75 in unpaid minimum wages, (ii) $14,561.75 in liquidated damages, and (iii) $5,071.86 in prejudgment interest;

(9)   Plaintiff Jorge Ramon is awarded damages in the amount of $1,713.44, comprised of (i) $777.00 in unpaid minimum wages, (ii) $777.00 in liquidated damages, and (iii) $159.44 in prejudgment interest;

(10)   Plaintiff Carmelo Velazquez is awarded damages in the amount of $3,745.79, comprised of (i) $1,683.50 in unpaid minimum wages, (ii) $1,683.50 in liquidated damages, and (iii) $378.79 in prejudgment interest;

(11)   Plaintiff Hector Ramirez is awarded damages in the amount of $2,454.42, comprised of (i) $1,110.75 in unpaid minimum wages, (ii) $1,110.75 in liquidated damages, and (iii) $232.92 in prejudgment interest; and

(12)   Plaintiffs are awarded $23,975.00 in attorneys' fees and $693.00 in costs.

The Clerk of Court is respectfully directed to close the Motion at ECF No. 59, and to close this case.

DATED:       New York, New York
             February 26, 2020

                                         SO ORDERED

                                         _____
                                         SARAH L. CAVE
                                         United States Magistrate Judge